INDEMNITY INSURANCE COMPANY OF NORTH AMERICA *et al. v.* FEDERAL SAVINGS & TRUST COMPANY *et al.*

(CC 496)

Submitted May 8, 1934. Decided May 29, 1934.

*Stewart & Hamstead* and *Erskine, Palmer & Curl,* for plaintiffs.

*Donley & Hatfield, Robert T. Donley, Donald G. Lazzelle* and *Harold A. Ritz,* for defendants.

KENNA, JUDGE:

This case is certified from the circuit court of Monongalia County, and, under the court's rulings and certification, we are required to state the legal sufficiency of the answer of the defendant and of a special replication to that answer by the plaintiffs. The trial chancellor held the answer good, and sustained a demurrer to the special replication. Questions arising upon the sufficiency of the bill were not certified, and the bill is before us only

in so far as recourse may be necessary to its allegations to throw light upon the other two papers.

An outline of the circumstances giving rise to the suit will prove of assistance in discussing the legal questions arising upon the papers.

Prior to the 2nd day of August, 1930, the plaintiffs, United States Guarantee Company and Indemnity Insurance Company of North America, were sureties of the Bank of Monongahela Valley on two several depository bonds in the penalty of $50,000.00 each to secure the deposits of Herbert C. Johnson, sheriff of Monongalia County. The defendants, E. D. Tumlin, John L. Hatfield, M. M. Darst, Robert T. Donley, Donald G. Lazzelle, C. R. Jones, Isaac L. Van Voorhis and A. W. Bowlby, were sureties upon a like bond of Federal Savings & Trust Company in the amount of $60,000.00. Both banks were regularly designated depositories for Monongalia County. On the 2nd day of August, 1930, the banks entered into an agreement by which the Federal Bank transferred to the Valley Bank all of its assets, either directly or as collateral security, in exchange for an agreement on the part of the Valley Bank that it would pay off and discharge the obligations of the Federal Bank, including its depositors. The Federal Bank was to suspend banking operations, and, according to the recitals of the agreement, its assets at the time exceeded its liabilities. On August 2, 1930, the sheriff's balance in the Federal Bank was $55,747.51. Subsequently, $15,000.00 was withdrawn, leaving the balance $40,747.51.

On November 26, 1930, the sheriff drew a check on the Federal Bank for the entire amount of his deposit, and deposited the sum in the Valley Bank in which he already had on deposit the sum of $56,520.20. On December 31, 1930, the Valley Bank was closed by the Banking Commissioner, payment of the fund on deposit by the sheriff was refused, and, at a later time, a judgment was rendered and settled against the sureties on the depository bond of the Valley Bank for the entire balance of the sheriff in the sum of $99,526.81, which included the amount by which his deposit in the Valley Bank had been

augmented by the transfer of the fund from the Federal Bank.

The bill of complaint is framed upon the theory that the withdrawal of the deposit in the Federal Bank under date of November 26, 1930, and the deposit of a like sum in the Valley Bank on that day by the sheriff did not operate as a transfer of funds; that in legal contemplation that transaction left the deposits in the respective banks as before; that the agreement of August 2, 1930, is nothing more than a liquidating understanding between the two banks under which the Valley Bank was to conduct the affairs of the Federal Bank, and that consequently at the date of the closing of the Valley Bank on December 31, 1930, the deposits of the sheriff had remained undisturbed in legal effect and left the liability upon the depository bonds of the respective banks as before. The bill therefore seeks subrogation against the sureties on the depository bond of the Federal Bank, since the depository sureties of the Valley Bank had theretofore discharged the entire depository obligation of both banks.

The answer sets up the contract between the Federal Bank and the Valley Bank, the transfer of funds by the sheriff from the one to the other, the suit by the sheriff to recover on the depository bond of the Valley Bank, the fact of that recovery alleging the defendant's version of the legal questions necessarily decided thereby, and relies upon the whole set of circumstances as being bona fide transactions to be accorded their full and normal legal effect, raising the following points: (a) Prior to the contract between the two banks it was intended that the Valley Bank would become legally bound to discharge the obligations of the Federal Bank to its depositors, and that it did become so bound; (b) that the transaction by which the sheriff withdrew his deposits from the Federal Bank was a bona fide withdrawal done under the direction of the officers and agents who were at the time acting for both the Federal Bank and the Valley Bank pursuant to the contract, and that its operation simply had the effect of carrying out the understanding between

the two banks by their express contract, the substantial terms of which were accepted by the sheriff, which fact is proven by his conduct, and that, in legal effect, it constituted a complete novation; that the re-deposit of the funds in the Valley Bank, it being a regularly designated county depository with ample bond to cover its deposits, including that made by the sheriff from the funds in the Federal Bank, was a legitimate and bona fide deposit and that it has so been adjudicated in the suit by the sheriff on the depository bond of the Valley Bank. (c) Upon the basis of the fact, as alleged in the answer and as set forth in the bill of complaint, and as contemplated by the contract of August 2, 1930, that both the Federal Bank and the Valley Bank were to, and did, preserve their separate and distinct corporate entities, there has been no default on the depository bond of the Federal Bank, and that there is no obligation either on that bank, or on the sureties upon its depository bond, to pay anything to the sheriff of Monongalia County; that the sheriff of Monongalia County is the obligee of the sureties on the depository bond of the Federal Bank, and that since no liability has accrued to the sheriff-obligee, there is nothing to which any person may be subrogated in consequence of these sureties being upon his depository bond; that the transactions contemplated by the bond have been terminated without loss to the sheriff, and, hence, that there is nothing upon which to predicate liability upon the part of the Federal Bank's sureties.

The contract between the Federal Bank and the Valley Bank is referred to in the answer as exhibit "A", but does not appear to be among the papers in the record.

The court sustained a demurrer to this answer in so far as it set up as exhibits transcripts of the records in the actions at law brought by the sheriff against the depository bond sureties of the Valley Bank, and overruled the demurrer as to the other averments of the answer.

We are of the opinion that the ruling of the trial chancellor upon the demurrer to this answer was correct. According to the allegations of the answer, the Valley Bank undertook, in the contract of August 2, 1930, to pay off

and discharge the liabilities of the Federal Bank, particularly its liabilities to its depositors. This was the moving consideration for the transfer, either outright or as collateral, of the assets of the Federal Bank to the Valley Bank. Pursuant to this arrangement, and acting in accord with the purposes of the two banks as expressly declared in the agreement of August 2, 1930, the sheriff withdrew his deposits from the Federal Bank. The two banks were then being operated by the same personnel, or, at least, the Valley Bank was in control of the affairs of both. The Federal Bank paid the checks and the Valley Bank accepted the deposits. We are asked to hold that this transaction, in effect, is a nullity because it represented no actual transfer of funds. In the absence of some special showing of fraud, or of circumstances other than the mere lack of an actual transfer of funds, we do not believe this position is justified. It did not, perhaps, represent an actual transfer of funds. The courts notice the fact that many bank clearances and transactions do not represent the actual transfer of funds in the sense of currency and coin. We understand that one of the purposes for the existence of clearing house associations is to do away with the inconvenience of basing all bank transactions on an actual transfer of funds from bank to bank. Yet it is well known that thousands of perfectly bona fide transactions are conducted daily by these institutions. So that, we believe, the acceptance on the part of the sheriff of the novation which was tendered by the agreement between the two banks, coupled with the fact, or evidenced by the fact, of a bona fide withdrawal from the Federal Bank and deposit in the Valley Bank, made the latter bank responsible to the sheriff as a depositor. This being so, the potential liability on his depository bond given by the bank (Valley Bank) immediately attached, and became actual upon the default of the Valley Bank to pay the deposit. This was recognized in the suit of the sheriff brought upon the depository bond of the Valley Bank. Furthermore, this court has quite recently recognized an agreement in every respect like the agreement of August 2, 1930, set up in this case, as con-

stituting, in itself, a transfer of funds from the selling bank to the purchasing bank in a manner that rendered the latter, and the sureties on its depository bond, liable for its own original deposits, and also for the amount by which that deposit was augmented in taking over the deposit of the selling bank, by holding that the amount by which the aggregate of the two deposits exceeded the legal limit constituted a trust fund for the benefit of the county. *Monongalia County Court* v. *Bank of Monongahela Valley,* 112 W. Va. 476, 164 S. E. 659.

It is urged that in the case of *C. E. Lawhead, Receiver* v. *Luther Lazzelle,* 113 W. Va. 896, 170 S. E. 172, this court dealt with an agreement in all respects like the agreement of August 2, 1930, exhibited in this case, by treating it as a mere liquidating agreement which constituted the purchasing bank the agent merely of the selling bank. The question in that case was one of statutory double liability on the part of a stockholder of the selling bank. It was urged that the contract between the two banks showed that the selling bank, while solvent, had provided for the payment of all of its liabilities in the same contract by which it sold all of its assets and suspended banking business, and that therefore there could be no liability on its stockholders. We simply stated that the contract, by its very terms, did not contemplate such a result, and that even though it contained, by way of recital, enough information to show the solvency of the selling bank, that the banking commissioner; in approving it, could not be said to be bound by it as a declaration of solvency of the selling bank. We therefore believe that the case in question is not authority for holding that the contract of August 2, 1930, was a mere contract of liquidation by which the purchasing bank became the liquidating agent of the selling bank. It is urged, also, that inasmuch as the selling bank warranted its assets to be sufficient to pay its liabilities, a legal fraud was perpetrated upon the purchasing bank. We do not believe that the mere fact that a warranty may have turned out to be ill-founded is sufficient to establish fraud in its making. On the contrary, it would just as well be argued that the

very fact that the warranty was required establishes that the failure of the assets was a possibility contemplated by both parties when the contract was entered into. Furthermore, it does not seem to us quite consistent to rely upon this warranty, treating the matter as an absolute transfer, and also to take the position that the contract in which it was made is a contract the effect of which is merely to create the Valley Bank the liquidating agent of the Federal Bank. It is further urged that the withdrawal by the sheriff is not valid because not made upon a county order. We regard this point as immaterial. The sheriffs make their deposits on their own choice in whatever lawful depositories are available to them, if no reason to the contrary appears. The sheriff here was merely going through the formality of making his choice of depositories. Furthermore, he was undertaking to cooperate with the arrangement between the banks by complying with their expressed desires. If his conduct had resulted in harm to the county, there might be a different question presented. There is no showing that his checks were not sufficient to meet the terms of the deposit, and to effect a valid withdrawal of his funds. His right to deposit those funds in any lawful depository, unless otherwise directed by the county court, is not questioned.

The special replication of the plaintiffs to the answer of the defendants alleges in substance that at the time of the contract of August 2, 1930, the assets transferred by the Federal Bank to the Valley Bank were insufficient to pay the obligations of the Federal Bank, and that this fact was known to the officers and directors of the Federal Bank who are the defendants in this case; that the Valley Bank, and its officers and agents, relied upon the representations of the Federal Bank as to the value of these assets, and upon the warranty of the Federal Bank to the effect that it would be responsible for any deficiency in them to pay off and discharge its liabilities; that there has never been any release of the undertaking of the Federal Bank and the sureties on its depository bond, nor has there been any waiver or release of the warranty of the Federal Bank to the effect that its assets

were sufficient to pay all of its liabilities, including the liability to the sheriff. The replication reiterates the position that the agreement of August 2, 1930, was a mere liquidating agreement of agency and states that the Federal Bank at the time of entering into it was, and has ever since been, totally insolvent. We cannot see, admitting the averments of this replication to be true, that the matter alleged constitutes a reply to the defense set up in the answer. It seems to us that the vital question of the case is the fact that the Federal Bank paid the sheriff's deposit in full. Even though this was done under a misapprehension, or by virtue of ill-founded representations, we cannot see how the sheriff would be affected by either. He was no party to any of the negotiations or arrangements between the banks or their officers. He simply had his money in the Federal Bank. He got it out. With no money in that bank, we cannot see how the sheriff could look to the sureties on the depository bond of that bank for anything. If the sheriff could not look to the sureties on his depository bond, we cannot follow the reasoning which asserts that any other person could look to those sureties. The bond was to indemnify the sheriff by reason of his deposits. That was the undertaking of the sureties. We do not see how that obligation can be enlarged so as to permit any other person to have recourse against the sureties, when the sheriff has been made whole.

The action of the trial chancellor in overruling the demurrer to the answer in part and in sustaining it in part is affirmed, as is also the action of the trial chancellor in sustaining the demurrer to plaintiffs' replication.

*Affirmed.*